IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LYDIA LEYBA and LAWRENCE TRUJILLO,
as co-personal representatives of the ESTATE
OF ROBERT DOMINGUEZ, deceased,

      Plaintiffs,

v.                                                       CV 16-185 WPL/LF

CITY OF SANTA FE; CHARLES A. LARAMIE, II;
RAYMOND J. RAEL; BOARD OF COUNTY
COMMISSIONERS OF SANTA FE COUNTY;
SANTA FE REGIONAL EMERGENCY
COMMUNICATIONS CENTER BOARD OF DIRECTORS;
ROBERT EAGAN; JUDITH EAGAN; LIVEWATCH
SECURITY LLC d/b/a SAFEMART; and DOES I-V;

      Defendants.

## ORDER DENYING CITY
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

      This lawsuit is based upon the accidental shooting of Robert Dominguez, the father of Plaintiffs, by Officer Charles Laramie of the Santa Fe Police Department in the early morning hours of March 4, 2013. Officer Laramie has filed a motion for summary judgment on the basis of qualified immunity, which Chief of Police Raymond J. Rael and the City of Santa Fe have joined. (Doc. 97.) They argue that it is undisputed that Mr. Dominguez pointed a gun at Officer Laramie that morning, and that Officer Laramie did not violate Mr. Dominguez's constitutional rights because his use of force was reasonable under the circumstances. In response, Plaintiffs dispute that Mr. Dominguez pointed a gun at Officer Laramie, contend that Officer Laramie's reckless conduct that night created the need to use deadly force, and submit that it was clearly

established at the time that an officer cannot use lethal force against an individual who posed no threat to the officer.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant raises a qualified immunity defense, the plaintiff must show both that the defendant's conduct violated a constitutional right and that the constitutional right was clearly established when the violation occurred. *Thomson v. Salt Lake Cty.,* 584 F.3d 1304, 1312 (10th Cir. 2009). If the plaintiff meets this two-part inquiry, the defendant assumes the normal summary judgment burden of establishing that no material facts exist that would defeat his claim for qualified immunity. *Clark v. Edmunds,* 513 F.3d 1219, 1222 (10th Cir. 2008).

Allegations of excessive force are analyzed under the Fourth Amendment's "objective reasonableness" standard. *See Graham v. Connor*, 490 U.S. 386, 395 (1989). "The 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. at 397. Proper application of the reasonableness inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id*. Police officers may be "forced to make split-

second judgments—in circumstances that are tense, uncertain and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id*.

In assessing the second *Graham* inquiry, the threat facing the officers, courts look at a number of factors, including 1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; 2) whether the suspect made hostile motions with the weapon towards the officer; 3) the distance separating the officers and the suspect; and 4) the manifest intentions of the suspect. *Est. of Larsen v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008). Courts will also examine whether the officers were in danger at the precise moment that they used force, and whether the officers' reckless conduct unreasonably created the need to use such force. *Thomson*, 584 F.3d at 1315, 1320.

There are no bright line rules for assessing the objective reasonableness of an officer's actions. *Est. of Larsen*, 511 F.3d at 1262. In the end, the inquiry is whether, "from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Id*. at 1260. If the facts, taken in the light most favorable to the plaintiff, show that the officer's conduct violated a constitutional right, then the court must examine whether the right was clearly established so that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). For the law to be clearly established, "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Walker v. City of Orem*, 451 F.3d 1139, 1151 (10th Cir. 2006).

In considering a motion for summary judgment, I normally view the facts and the reasonable inferences from the facts in the light most favorable to the non-moving party. *Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007). When one party tells a story that is blatantly

3

contradicted by a video or audio recording, so that no reasonable jury could believe it, the court should not adopt that version of the facts when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008). This standard "is a very difficult one to satisfy," and applies only in rare, exceptional cases. *Cordero v. Froats*, 613 F. App'x 768, 769 (10th Cir. 2015) (unpublished). It is not enough that the video or audio strongly supports the defendant's position, *id.*; the plaintiff's version of events must be "so utterly discredited by the record that no reasonable jury could have believed him." *Scott*, 550 U.S. at 380.

Officer Laramie shot Mr. Dominguez at approximately 3:30 a.m. on March 4, 2013, when he was investigating a home burglary alarm call at 512 Johnson Lane in Santa Fe. Mr. Dominguez, who acted as the caretaker of 512 Johnson Lane when its owners were not present, had been contacted by the alarm company about the alarm going off and went to the house. Officer Laramie was not informed that a caretaker or homeowner would be responding to the alarm. Officer Laramie turned on his belt tape recorder before he approached the house, so there is a contemporaneous audio record of what occurred that morning.

When Officer Dominguez approached the house he could hear the alarm. He entered the courtyard to get a view of the house and assess the situation. He could see that the front door of the house was open, and he notified dispatch of the open door. Officer Laramie could hear someone moving around inside the house. The alarm went off, but then went back on again. Officer Laramie then saw a man in the open doorway. Officer Laramie identified himself as a police officer and asked the man to identify himself. The man responded that he was Robert Dominguez. It is at this point that the parties' version of events diverges.

Officer Laramie claims that after Mr. Dominguez identified himself, he saw that Mr. Dominguez was wearing a holster and was reaching for it. Officer Laramie again identified himself as a Santa Fe Police Officer and ordered Mr. Dominguez to keep his hands down. Mr. Dominguez did not comply with Officer Laramie's order and drew a gun and pointed it at Officer Laramie. Mr. Dominguez was ten to fifteen feet away from Officer Laramie, who was in an exposed, uncovered location. Because he believed his life was in imminent danger, Officer Laramie fired five shots at Mr. Dominguez. Mr. Dominguez fell to the ground, but then raised and pointed his gun again. Officer Laramie fired two additional shots. Officer Laramie then radioed for an ambulance and notified dispatch that Mr. Dominguez had pulled a gun on him. Officer Laramie next entered the house and positioned himself to cover Mr. Dominguez until additional officers arrived. During this time, Officer Laramie asked Mr. Dominguez why he pulled a gun on him. Mr. Dominguez responded: "I didn't mean to. I couldn't see."

Plaintiffs admit that Mr. Dominguez brought a gun with him that morning, but they deny that he pointed it at Officer Laramie prior to the shooting. Plaintiffs claim that Mr. Dominguez put the gun down while he was trying to turn off the alarm, and that what Officer Laramie saw was an empty holster and Mr. Dominguez beginning to put his hands up when he was shot. Officer Laramie admits that he did not see the gun in Mr. Dominguez' hand or laying on the floor near him after he fell to the floor. Instead, Officer Laramie saw the gun sitting on a chair, inside the house, to the right of the door. Officer Laramie stated that the gun "just sort of disappeared" after his second volley of shots, and admitted that he did not see Mr. Dominguez throw the gun onto the chair and he did not know how the gun got on the chair. Officer Faron Rodriguez, one of the first officers to arrive on the scene, claimed that he saw the gun by Mr. Dominguez' left hand when he arrived, but Officer Laramie, who was present with Mr.

Dominguez in the house for five to six minutes before Officer Rodriguez arrived, disputes that the gun was near Mr. Rodriguez on the floor after the shooting.[1]

The parties dispute the admissibility of statements made by Mr. Dominguez in the months after the accident. Plaintiffs rely on recorded statements that Mr. Dominguez gave to the New Mexico State Police and to his own attorney on March 14, 2013 while he was in the hospital recovering from his wounds. In these statements Mr. Dominguez claims that he put his gun down while trying to turn off the alarm and never pointed it at Officer Laramie to precipitate the shooting. Plaintiffs argue that the statements are admissible under Federal Rule of Evidence 804(b)(2) as a statement made under the belief of imminent death or under Rule 803(5) as a recorded recollection, but confine their argument to a single two sentence footnote that does not deign to cite any cases in support of the argument.

To be admissible under the dying declaration exception to the hearsay rule, a declarant's statement about the cause or circumstances of his impending death must be made while the declarant is conscious of impending death and is under the belief that there is no chance of recovery. *U.S. v. Two Shields*, 497 F.3d 789, 793 (8th Cir. 2007); *U.S. v. Lawrence*, 349 F.3d 109, 116 (3d Cir. 2003). Whether the declarant believed his death is imminent is determined by looking at the facts and circumstances surrounding his statement. "A declarant's serious injuries can support an inference that he believed death was imminent, but the nature and extent of the injuries must be so severe that 'obviously … [the declarant] must have felt or known that he could not survive.'" *Two Shields*, 497 F.3d at 793. Plaintiffs allege that Mr. Dominguez was

---

[1] Plaintiffs wisely do not rely upon an opinion given by their police procedures expert that "[t]aking Mr. Dominguez' set of facts as true, the incident did not occur as reported by Officer Laramie and the police reports are false." This opinion contradicts the expert's earlier statement that he does not make credibility determinations in expressing his opinions because the resolution of those conflicts "are obviously within the purview of a jury to decide." Further, expert testimony is not admissible on the credibility of parties or witnesses because 1) it usurps a critical function of the jury, 2) is not helpful to the jury, which can make its own determination of credibility, and 3) when provided by impressively qualified experts, is prejudicial and unduly influences the jury. *U.S. v. Hill*, 749 F.3d 1250, 1258 (10th Cir. 2014).

hospitalized and physically compromised when he gave the interviews, but this falls far short of showing that he made the statements "with the consciousness of a swift and certain doom." *Lawrence*, 349 F.3d at 116. Plaintiffs offered no evidence that Mr. Dominguez believed that his death was imminent when he made the statements. The statements were made ten days after the shooting, and contain a comment by Marsha Roybal, the niece of Mr. Dominguez, that "[e]very day, he's even better." Plaintiffs did not produce evidence from Mr. Dominguez' doctors concerning his health at the time or whether they told Mr. Dominguez that his death was imminent, or that Mr. Dominguez had recently received the last rites. Mr. Dominguez did not die until January 3, 2014. Thus, Plaintiffs have failed to establish that the statements are admissible as statements made under the belief of impending death.

The statements are also not admissible under Rule 803(5) as a recorded recollection. Under this rule, "a document may be read to the jury if (1) the witness once had knowledge about matters in the document; (2) the witness now has insufficient recollection to testify fully and accurately; and (3) the record was made or adopted at a time when the matter was fresh in the witness's memory and reflected his knowledge correctly." *U.S. v. Cash*, 394 F.3d 560, 564 (7th Cir. 2004). Rule 803(5) conditions the admission of a record on the witness's impaired memory. *U.S. v. Dazey*, 403 F.3d 1147, 1166-67 (10th Cir. 2005). Ordinarily, counsel will show the document to the witness in court to ascertain whether the witness has insufficient recollection to testify about the incident. *Sieber v. Wigdahl*, 704 F. Supp. 1519, 1525 (N.D. Ill. 1989). If the document does not refresh the witness's recollection, the witness may read the document itself as a past recollection recorded if the other requirements of the rule are met. *Id*. A statement cannot be admitted as a past recollection recorded unless the witness who made the statement is present and testifies at trial. *Id*. (distinguishing between Rule 803's use of the term "declarant" and Rule

803(5)'s use of the term "witness"); 4 FEDERAL RULES OF EVIDENCE MANUAL § 803.02[6][a] (Mathew Bender 11th ed.) ("If the witness who prepared (or adopted) the record is unavailable, then the record cannot be admitted under Rule 803(5)."); 2 MCCORMICK ON EVIDENCE § 279 (Thomson Reuters 7th ed.) ("[T]he reliability of the assertions rests upon the veracity of a witness who is present and testifying.") Because Mr. Dominguez cannot testify at trial that he does not recall the incident, the recorded statements are not admissible under Rule 803(5).

The City Defendants rely upon testimony by Gerald Vasilik, the nephew of Mr. Dominguez, about his conversations with Mr. Dominguez concerning the incident. According to the City Defendants, Mr. Vasilik testified that Mr. Dominguez admitted pulling a gun on Officer Laramie that morning and pointing it at him. The transcript of Mr. Vasilik's testimony does not fully support that statement. Mr. Vasilik testified that on several occasions Mr. Dominguez said that "I should have known better" and "I didn't mean to." (Doc. 133-1 at 4.) On one occasion Mr. Dominguez said that he had the gun in his hand and he raised it. Mr. Vasilik denied that Mr. Dominguez ever said he pointed the gun at Officer Laramie: "I'm not going to use your word 'pointed,' because I don't remember him ever saying pointing." *Id*. Plaintiffs do not contest the City Defendants' assertion that these statements would be admissible as admissions of a party opponent. *See* FED. R. EVID. 801(d)(2)(A).

However, the City Defendants rely only on selected portions of Mr. Vasilik's testimony about what Mr. Dominguez said occurred before he was shot. Although Plaintiffs rather inexplicably do not address this issue, Mr. Vasilik testified that he was present on multiple occasions when Mr. Dominguez denied that his gun was in his hand or that he pointed it at Officer Laramie. On these occasions Mr. Dominguez stated that he did not have the gun in his hand when he was shot because he had set the gun down, or that the gun was in his holster or in

his pocket. Federal Rule of Civil Procedure 56(c)(3) allows a court to consider materials in the record not cited by the parties, and testimony that on other occasions Mr. Dominguez denied holding the gun or pointing it at Officer Laramie appears to be admissible under Federal Rule of Evidence 106. *See U.S. v. Lopez-Medina*, 596 F.3d 716, 734-35 (10th Cir. 2010).

Having determined the facts that are admissible when evaluating the City Defendants' motion, I turn to whether Officer Laramie's use of force was reasonable under the circumstances. The first factor from *Graham*, "the severity of the crime at issue," 490 U.S. at 396, weighs in favor of Officer Laramie. The offense that Officer Laramie was investigating that night, residential burglary, is a third degree felony in New Mexico. *See* N.M.S.A. § 30-16-3(A) (1978). Burglars may be unarmed, but they may also be armed, as illustrated by Mr. Dominguez' decision to bring a weapon with him for safety purposes. Whether classified as a "property" rather than a "violent" crime, *Tennessee v. Garner*, 471 U.S. 1, 21 (1985), residential burglary in New Mexico is considered a serious crime.

The second factor from *Graham* is whether the suspect poses an immediate threat to the safety of the officer or others, 490 U.S. at 396. While this can be evaluated using the non-exclusive factors set out in *Estate of Larsen*, 511 F.3d at 1260, it is difficult to do so because of the parties' dispute about whether Mr. Dominguez pointed a gun at Officer Laramie. Concerning the first *Larsen* factor—whether the officer ordered the suspect to drop his weapon, and the suspect's compliance with that command—the recording reflects that Officer Laramie did not order Mr. Dominguez to drop a gun, but ordered him to keep his hands down. Concerning the third *Larsen* factor—the distance between the parties—the City Defendants estimate they were 10 - 15 feet apart. While no cases directly address this issue, the distance between the parties seems to be less important when the suspect has a high-powered weapon instead of a knife or

club. The dispute about the presence or absence of Mr. Dominguez' gun precludes further analysis of the other two factors—whether Mr. Dominguez pointed the gun or otherwise manifested dangerous intentions towards Officer Laramie.

The *Larsen* factors are only aids in making the ultimate determination, which is "whether from the perspective of a reasonable officer on the scene, the totality of the circumstances justified the use of force." *Id.* at 1260. Mr. Dominguez is not able to testify at trial about his encounter with Officer Laramie that morning, and courts have been cautioned when considering a motion for summary judgment to ensure that the officer is not taking advantage of the victim's unavailability. *Pauly v. White*, 814 F.3d 1060, 1079 (10th Cir. 2016) *rev'd on other grounds White v. Pauly*, 137 S. Ct. 548 (2017). This concern is somewhat mitigated by the audio recording, which strongly supports Officer Laramie's testimony that he believed that Mr. Dominguez pointed a gun at him. In addition, Mr. Dominguez at times made statements that seem to indicate that he pointed a gun at Officer Laramie. But the recording is not conclusive on this issue, and the City Defendants do not even argue that Plaintiffs' version of events is blatantly contradicted by it. Further, the statements are somewhat ambiguous, and on other occasions Mr. Dominguez denied pointing a gun at Officer Laramie.

Taking the facts in the light most favorable to Plaintiffs, Mr. Dominguez denied pointing his gun at Officer Laramie. Further, Officer Laramie admitted that, after the shooting, he saw Mr. Dominguez' gun, not on the floor by Mr. Dominguez, but three to four feet away on a chair. He also admitted that he did not see Mr. Dominguez throw the gun onto the chair and did not know how it got on the chair. If Mr. Dominguez pointed the gun at Officer Laramie while he was laying on the floor, it is a reasonable inference that the gun would have ended up in his hand or

near him on the floor, not on a chair several feet away, after the second volley of shots. Thus, the second *Graham* factor weighs in favor of Plaintiffs.

The parties also dispute the third *Graham* factor, "whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396. While Officer Laramie claims that Mr. Dominguez pointed a gun at him, Plaintiffs deny this and contend that he was raising his hands to surrender. Once again the audio recording does not address this issue. Taking the facts in the light most favorable to Plaintiffs, the third *Graham* factor weighs in favor of Plaintiffs.

Plaintiffs argue that, even if there was a need for deadly force, it was recklessly created by Officer Laramie. In addition to considering whether an officer reasonably believed he was in danger when he used force, courts also consider whether the officer's "own reckless or deliberate conduct during the seizure unreasonably created the need to use such force." *Medina v. Cram*, 252 F.3d 1124, 1132 (10th Cir. 2001). The officer's conduct must be immediately connected to the threat of force and must rise to the level of recklessness; merely negligent actions will not suffice. *Id.*; *Thomson*, 584 F.3d at 1320. This analysis is "simply a specific application of the 'totality of the circumstances' approach inherent in the Fourth Amendment's reasonableness standard." *Medina*, 252 F.3d at 1132. Plaintiffs contend that Officer Laramie recklessly created the situation by failing to wait for backup before approaching the house, and by failing to take cover when he saw Mr. Dominguez, and submitted an expert report to support these arguments.

Summary judgment would not be precluded by the expert's opinion, because violations of state law or law enforcement standards would not give rise to a § 1983 claim for excessive force. *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1222 (10th Cir. 2005). The proper perspective from which to evaluate the conduct of Officer Laramie is from that of a "reasonable

11

officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Id*. Utilizing the correct standard, it was objectively reasonable for Officer Laramie to take the steps he did that evening to investigate the burglar alarm. Officer Laramie's actions in approaching the house by himself to investigate the report of the burglar alarm, and failing to take cover when he saw Mr. Dominguez in the doorway, were reasonable under the circumstances and did not recklessly create the need to use force. Even if it was negligent for Officer Laramie to act as he did, that would not suffice, and arguments similar to those advanced by Plaintiffs have been rejected by the Tenth Circuit. *See Clark v. Bonecutt*, --- F. App'x ---, ---, 2017 WL 56283, at *9 (10th Cir. Jan. 5, 2017) (unpublished) (Deputy "was under no obligation to take cover in order to discourage [suspect] from using his vehicle as a weapon to inflict potentially deadly force"); *Jiron v. City of Lakewood*, 392 F.3d 410, 418 (10th Cir. 2004) (Court rejects argument that the officer recklessly created the situation by failing to wait for backup because the court "evaluate[s] the officer's reasonableness from the on-scene perspective, not with the advantage of 20/20 hindsight"); *Medina*, 252 F.3d at 1132 (Court rejects argument that officers acted recklessly by failing to remain under cover rather than confronting plaintiff).

      Officer Laramie argues in his reply brief that, even if Mr. Dominguez did not point a gun at him, he is still entitled to qualified immunity because he reasonably believed Mr. Dominguez did. Citing *Armijo v. Peterson*, 601 F.3d 1065, 1072 (10th Cir. 2010), he asserts that, because the Fourth Amendment evaluates reasonableness based on what the officer reasonably believed at the time, it does not matter if he was wrong if his belief was reasonable. He also relies in part on *Simmonds v. Genesee Co.*, 682 F.3d 438 (6th Cir. 2012), where the officers were granted

qualified immunity despite the fact that the suspect was holding a cell phone and not a gun when he was shot.

While courts normally do not consider arguments raised for the first time in a reply brief, *Headrick v. Rockwell Int'l Corp.*, 24 F.3d 1272, 1277 (10th Cir. 1994), I will address this argument so that all issues may be resolved on appeal. First, the law is clear that Officer Laramie's belief that Mr. Dominguez pointed a gun at him must be reasonable. *Attocknie v. Smith*, 798 F.3d 1252, 1257 (10th Cir. 2015). Reasonable mistakes of fact or law must be objectively reasonable, and courts do not examine the subjective understanding of the particular officer involved. *Id*. Because after the shooting the gun was found four feet away from Mr. Dominguez on a chair, instead of on the floor near him, a jury "might reasonably refuse to credit his belief as reasonable." *Id*.; *see also Walker v. City of Orem*, 451 F.3d 1139, 1160 (10th Cir. 2006) (officer's belief that suspect was pointing a gun at him was not reasonable accepting plaintiff's version of events and giving her the benefit of reasonable inferences).

Second, *Simmonds* is clearly distinguishable from this case. In *Simmonds*, the police officers were informed that the suspect had threatened to kill his ex-girlfriend's parents, had been drinking, and was displaying mentally unstable behaviors. 682 F.3d at 445. They knew that he was possibly suicidal and might be armed with a weapon. *Id*. When the officers contacted the suspect, he fled in his truck, ignored repeated orders to show his hands, yelled "I have a gun" at the officers, and pointed a silver object at the officers as if it were a weapon. *Id*. The Sixth Circuit appropriately concluded that, under these circumstances, the officers were constitutionally permitted to use deadly force. No similar facts are present here.

The next issue is whether the law was clearly established when this incident occurred. The Supreme Court has recently reminded courts that "clearly established law" should not be

defined at a high level of generality. *White*, 137 S. Ct. at 552. Instead, the clearly established law must be "particularized" to the facts of the case. *Id*. Courts do not require a case directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015).

The law on excessive force is well settled: an officer may use deadly force only if a reasonable officer in his position would have had probable cause to believe there was a threat of serious physical harm to himself or to others. *Graham*, 490 U.S. at 397-97; *Thomas v. Durastanti*, 607 F.3d 655, 664 (10th Cir. 2010). An officer may use deadly force to defend himself if threatened by a deadly weapon. *Thomas*, 607 F.3d at 664; *Jiron*, 392 F.3d at 418. An important inquiry is whether the officer was in danger at the exact moment he used force. *Thomas,* 607 F.3d at 664. The corollary is also well established: a law enforcement officer may not use deadly force to seize an unarmed person who is not posing any threat to the officer or to others. *King v. Hill*, 615 F. App'x 470, 477 (10th Cir. 2015) (unpublished).

Officer Laramie suggests that he reasonably believed his life was in danger because he saw that Mr. Dominguez was wearing a holster and ignored his commands to keep his hands down. He argues that "a reasonable person would assume that a person reaching for a holster will be drawing a gun." But the law is clearly established that even if Mr. Dominguez had a gun, the mere presence of a weapon is not sufficient to justify the use of force. *Walker*, 451 F.3d at 1160; *Cooper v. Sheehan*, 735 F.3d 153, 159 (4th Cir. 2013); *Bouggess v. Mattingly*, 482 F.3d 886, 891 (6th Cir. 2007); *Murphy v. Bitsoih*, 320 F.Supp.2d 1174, 1193 (D.N.M. 2004). Lethal force may be used only when an officer or another person is threatened with the weapon, *Walker*, 451 F.3d at 1160; *Cooper*, 735 F.3d at 159; *Murphy*, 320 F.Supp.2d at 1193; and the parties' dispute whether Mr. Dominguez threatened Officer Laramie with a weapon. The constitutional right at

issue—the right to be free from deadly force when posing no threat—was clearly established when Officer Laramie shot Mr. Dominguez.

Officer Laramie faced an uncertain and potentially dangerous situation when he responded to the burglar alarm at the Eagans' house that morning. If, as Officer Laramie contends, Mr. Dominguez pointed his gun at him, Officer Laramie was constitutionally permitted to use deadly force to defend himself. But taking the facts and the reasonable inferences from them in the light most favorable to Plaintiffs as I must when ruling on a motion for summary judgment, there is a material dispute about whether Officer Laramie's use of force was reasonable under the circumstances that precludes granting summary judgment for him and the other City Defendants. Accordingly, their motion for summary judgment is denied.

IT IS SO ORDERED.

_____
William P. Lynch
United States Magistrate Judge