# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

LYDIA LEYBA and LAWRENCE TRUJILLO,
as co-personal representatives of the ESTATE
OF ROBERT DOMINGUEZ, deceased,

        Plaintiffs,

v.                                    CV 16-185 WPL/LF

CITY OF SANTA FE; CHARLES A. LARAMIE, II;
RAYMOND J. RAEL; BOARD OF COUNTY
COMMISSIONERS OF SANTA FE COUNTY;
SANTA FE REGIONAL EMERGENCY
COMMUNICATIONS CENTER BOARD OF DIRECTORS;
ROBERT EAGAN; JUDITH EAGAN; LIVEWATCH
SECURITY LLC d/b/a SAFEMART; and DOES I-V;

        Defendants.

## ORDER GRANTING LIVEWATCH'S
## *DAUBERT* MOTION TO EXCLUDE TESTIMONY

This lawsuit is based upon the accidental shooting of Robert Dominguez, the father of Plaintiffs, by Officer Charles Laramie of the Santa Fe Police Department in the early morning hours of March 4, 2013. Mr. Dominguez was seriously injured, and Plaintiffs sued Officer Laramie, his supervisor, Chief of Police Raymond J. Rael, and his employer, the City of Santa Fe; the Board of County Commissioners of Santa Fe County and Santa Fe Regional Emergency Communications Center Board of Directors, which operates the County's 911 Center; Robert and Judith Eagan, who owned the house where the shooting occurred; and LiveWatch Security, the Eagans' home alarm system company. At issue is Livewatch's *Daubert* motion to exclude testimony from Roger Clark, Plaintiff's liability expert. (Doc. 111.)

Clark has submitted an expert report that concludes that Livewatch, Officer Laramie, the Santa Fe Police Department, and the 911 Center all share responsibility for the sequence of events that led to the wounding of Mr. Dominguez. Concerning his opinions as to Livewatch's culpability, Clark relies upon the following facts: 1) Livewatch installed and monitored an alarm system at the Eagans' house; 2) It is undisputed that the alarm activation at the Eagans' house on March 4, 2013 was a malfunction and not because of criminal activity; 3) Livewatch notified Mr. Dominguez on March 4, 2013 that the Eagans' alarm system was going off; 4) Livewatch then notified the County's 911 Center about the alarm notification, and failed to advise the 911 Center that it had already contacted Mr. Dominguez to respond to the house; and 5) Livewatch received a second alarm activation at the Eagans' house, and failed to notify the 911 Center that this meant that Mr. Dominguez had entered the house. Based upon these facts, Clark concludes that this incident began as an alarm malfunction, and Livewatch incompetently reacted to the alarm notifications that night and further violated its own written protocols regarding alarm monitoring communications that would have eliminated the risk to Mr. Dominguez.

Livewatch argues that, while Clark may be qualified to offer expert testimony about police procedures, he is not qualified to testify regarding alarm equipment malfunction and monitoring procedures. Further, it argues that his opinions are not reliable because they ignore key facts of this case, and it raises evidentiary challenges to some of Clark's opinions. In response, Plaintiffs contend that Livewatch's motion is premature and would be more appropriately raised through a pretrial motion in limine. Plaintiffs also argue that Clark's opinions are reliable and Livewatch should challenge them through cross-examination, and that Clark's experience as a police officer qualifies him to testify in this area.

Plaintiffs' argument that the *Daubert* motion is premature is worth the one sentence they

devote to it. Courts enter scheduling orders so that discovery proceeds in a (relatively) straightforward fashion so the case can either be settled or prepared for trial. Scheduling orders are not idly entered by courts, and are disregarded by counsel at their peril. *Washington v. Arapahoe Cnty. Dep't of Soc. Servs*., 197 F.R.D. 439, 441 (D. Colo. 2000). The scheduling order requires that *Daubert* motions be filed by December 1, 2016, and Livewatch's motion was filed on that date.

The admissibility of expert testimony is analyzed under *Daubert* and Federal Rule of Evidence 702, pursuant to which judges must serve as gatekeepers to keep scientific and other expert testimony that is not reliable and relevant out of the courtroom. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596-97 (1993). For expert testimony to be admissible, the judge must ensure that the expert is sufficiently qualified to give the opinion, the expert's methodology must be sufficiently reliable, and the testimony must assist the trier of fact to understand an issue in the case. *Id.* In *Kumho Tire*, the Supreme Court made clear that the *Daubert* framework applies not only to scientific testimony, but to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999).

"In determining whether expert testimony is admissible, the district court generally must first determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (quoting FED. R. EVID. 702). "Second, if the expert is sufficiently qualified, the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Id.* The court must also decide whether the testimony is relevant; that is, whether it would aid the jury in resolving a factual issue. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1238 (10th Cir. 2004). Because "there are many different kinds of experts,

3

and many kinds of expertise," the *Daubert* factors are not a definitive checklist or test and some factors may not be pertinent to assessing the reliability of non-scientific experts. *Kumho Tire*, 526 U.S. at 150; *see generally* William P. Lynch, *Doctoring the Testimony: Treating Physicians, Rule 26, and the Challenges of Causation Testimony*, 33 REV. LITIG. 249, 301-09 (2014).

When considering *Daubert* challenges to expert testimony, courts must be careful to maintain the proper balance between the court's role as gatekeeper and the jury's role as the ultimate fact finder. *McDowell v. Brown*, 392 F.3d 1283, 1299-1300 (11th Cir. 2004). To present expert testimony, a party need not prove that his expert is indisputably correct or that his theories are "generally accepted" in the relevant community. *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003). Instead, the party must show that the methods employed by the expert in reaching his conclusions are based on reliable methodologies and that his opinions are based on facts sufficiently tied to the case. *Id.* When expert testimony meets the *Daubert* standard, the expert may testify and the fact finder decides how much weight, if any, to give that testimony. *Zuchowicz v. United States*, 140 F.3d 381, 387 (2d Cir. 1998).

Livewatch first challenges Clark's qualifications to offer expert testimony on the topics of alarm equipment malfunction and alarm monitoring procedures. Plaintiffs bear the burden of showing that their expert testimony is admissible. *Conroy v. Vilsack*, 707 F.3d 1163, 1168 (10th Cir. 2013). When an expert's qualifications are challenged, a party must show that the expert has skill, experience or knowledge in the particular field at issue or that it falls within the reasonable confines of the witness's expertise. *Id.* at 1169.

The name of his business, Police Procedures Consultant, Inc., is the first hint as to Clark's area of possible expertise. In his report, he states that he served for 27 years as a law enforcement officer, and since his retirement in 1993 has held himself out as an expert in jail and

police procedures. He claims to have testified as an expert in the following areas: use of force, jail procedures and jail administration, investigations, police procedures, investigative procedures, shooting scene reconstruction, police administration and Taser weapons. He does not claim in his report to have any knowledge, skill, experience, training or education about alarm equipment malfunction and alarm monitoring procedures. The report also does not disclose any studies, tests or experiments he performed, any industry standards or literature about alarm equipment malfunction or monitoring procedures he reviewed, or that he has testified as an expert in this field.

Implicitly recognizing these problems, Plaintiffs gently back away from claiming that Clark is qualified to render most of his opinions concerning Livewatch. They agree they will not elicit testimony from Clark concerning the functioning of the alarm equipment itself. They also agree not to elicit testimony from Clark about Livewatch's internal operations, its training methods or its written protocols regarding alarm monitoring communications. Plaintiffs rely solely on the argument that Clark's training in the handling of alarm activations and his personal response as a police officer to them qualifies him to offer expert testimony on how Livewatch's alarm monitoring operators should handle responses to alarm calls.

It is true that an expert witness can be qualified solely on experience. *Nacchio*, 555 F.3d 1258. But when that is the case, "'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* (quoting FED. R. EVID. 702 advisory committee's note (2000)). Plaintiffs fail to explain how Clark's training in handling alarm activations or his experience as a police officer responding to them qualifies him as an expert on alarm monitoring procedures. A court's gatekeeping function "requires more than simply 'taking the expert's word

for it.'" *Id*. Because he is not qualified to testify about alarm equipment or monitoring procedures, Clark's testimony on these issues must be excluded. *See Conroy*, 707 F.3d at 1168-69 (Court affirms decision that expert could not testify about sex stereotyping in the workplace because she had no skill, experience or knowledge in the field and it did not fall within the reasonable confines of her expertise); *Milne v. USA Cycling, Inc.,* 575 F.3d 1120, 1133-34 (10th Cir. 2009) (Court affirms decision to exclude expert testimony on standard of care in mountain-bike races because the expert was not sufficiently qualified to give such testimony).

Livewatch also challenges the reliability of Clark's opinions. Courts determine whether an expert's opinion is reliable by assessing the reasoning and methodology used by the expert. *Nacchio*, 555 F.3d at 1241. The party offering the testimony must show, among other things, that the opinions are based on facts which satisfy Rule 702's reliability requirements. *Conroy*, 707 F.3d at 1170. When an expert is "oblivious to [ ] key facts" in a case, his opinion cannot rest on a reliable foundation. *Id.; see also Onyiah v. St. Cloud State Univ.,* 684 F.3d 711, 720 (8th Cir. 2012) (expert testimony is properly excluded when it is excessively speculative or unsupported by sufficient facts); *Elcock v. Kmart Corp.,* 233 F.3d 734, 754-56 (3d Cir. 2000) (economist's testimony on economic damages should have been excluded because his assumptions were not supported by a sufficient factual foundation).

As in *Conroy*, Clark is oblivious to key facts in this case. Livewatch contests that the alarm activation was a malfunction, although Clark confidently asserts this issue is undisputed. Plaintiffs argue that Clark's mistake as to what company monitored the Eagans' alarm system is not properly raised through a *Daubert* motion. This is nonsense, of course, because courts are required to keep expert testimony that is not reliable out of the courtroom. Plaintiffs do not dispute that Livewatch did not install or monitor the alarm system at the Eagans' house.

6

Plaintiffs also do not dispute that a third party, Criticom Monitoring Services, provided monitoring services for the Eagans' alarm system, and that Criticom employees communicated with Mr. Dominguez and the 911 Center after the alarm activation that night. Because Clark's opinions as to Livewatch rest on improper factual assumptions, they are not reliable and must be excluded.

Livewatch's *Daubert* motion to exclude Clark's testimony is granted. Because Clark is not qualified to offer expert testimony as to alarm equipment or monitoring procedures, and his opinions do not rest on a reliable foundation, I need not reach Livewatch's other specific challenges to his testimony.

IT IS SO ORDERED.

William P. Lynch
United States Magistrate Judge